U.S. DISTRICT **COURT**
**N.D. OF N.Y.**
**FILED**

UNITED STATES DISTRICT COURT

JUN 10 2009

NORTHERN DISTRICT OF NEW YORK

LAWRENCE K. BAERMAN, **CLERK**
ALBANY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | :     **Superseding Indictment** |
| | : |
| | :     CRIM. NO. 8-09-CR-301(GLS) |
| | : |
| v. | :     Count 1: 21 U.S.C. § 846 |
| | :     Count 2: 18 U.S.C. § 1956(h) |
| **(1) STEVEN SARTI,** | :     Count 3: 21 U.S.C. § 848 |
| aka "Goof" | :     Count 4: 21 U.S.C. § 963 |
| aka "Goofy" | :     Count 5: 21 U.S.C. § 841(a) |
| **(2) EDWARD KENER,** | :     Count 6: 21 U.S.C. § 841(a) |
| aka "the Russian" | :     Count 7: 21 U.S.C. § 841(a) |
| **(3) JOHN BELANGER,** | :     Count 8: 21 U.S.C. § 841(a) |
| **(4) ZACHARY GOUCHIE** | : |
| aka "French" | :     (8 felony counts and 2 |
| aka "Frenchie" | :     forfeiture allegations) |
| **(5) RICHARD TODD ADAMS** | : |
| aka "Acid Adams" | : |
| aka "Frank" | : |
| **(6) CHARLES KEYES** | : |
| aka "Chevy" | : |
| **(7) ANDREY NEVSKY** | : |
| **(8) FABRIZIO PAPASODORO** | : |
| "Fab" | : |
| **(9) CHRISTOPHER BIRKBECK** | : |
| **(10) ANTHONY PLATA** | : |
| aka Tony | : |
| **(11) OLIVER DAVID** | : |
| aka "OD" | : |
| **(12) JASON BALDASSARE, and** | : |
| **(13) KARL BOURASSA** | : |
| | : |
| Defendants. | : |
| | : |

THE GRAND JURY CHARGES:

1

## Count 1

## CONSPIRACY TO POSSESS WITH THE INTENT TO DISTRIBUTE AND TO DISTRIBUTE A CONTROLLED SUBSTANCE

1.      That beginning sometime in or before about July 2007, the exact date being unknown, and continuing thereafter up to and including on or about June 10, 2009, in the Northern District of New York and elsewhere, the Defendants,

**(1) STEVEN SARTI,**
aka "Goof"
aka "Goofy"
**(2) EDWARD KENER,**
aka "the Russian"
**(3) JOHN BELANGER,**
**(4) ZACHARY GOUCHIE**,
aka "French"
aka "Frenchie"
**(5) RICHARD TODD ADAMS**,
aka "Acid Adams"
aka "Frank"
**(6) CHARLES KEYES**,
aka "Chevy",
**(7) ANDREY NEVSKY**,
**(8) FABRIZIO PAPASODORO**,
"Fab"
**(9) CHRISTOPHER BIRKBECK**,
**(10) ANTHONY PLATA**,
aka Tony
**(11) OLIVER DAVID**,
aka "OD"
**(12) JASON BALDASSARE**, and
**(13) KARL BOURASSA,**

knowingly and intentionally combined, conspired, confederated and agreed with each other and others to possess with intent to distribute and to distribute a controlled substance, which offense involved more than 1,000 kilograms of marijuana, a schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

2

All in violation of Title 21, United States Code, Section 846, and subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(A).

### Manner and Means

2.      Among the manner and means by which the Defendants and other members of the conspiracy conducted and participated in the conduct of the affairs of the conspiracy were the following:

a.      **STEVEN SARTI** is the principal leader and organizer for a large-scale drug trafficking organization (hereinafter "the organization") operating in the Northern District of New York and elsewhere. **SARTI** organized and implemented a sophisticated scheme to smuggle narcotics and currency across the United States border into and from Canada. Principally, the organization delivered large quantities of marijuana on a weekly basis to various narcotics dealers in New York, Pennsylvania, New Hampshire, Massachusetts, and other locations, in exchange for large sums of United States currency. **SARTI** was responsible for coordinating shipments of narcotics from the organization's sources of supply in Canada, arranging for transportation of the narcotics across the Canadian border, delivering the narcotics to the organization's customers, and smuggling currency from the United States into Canada for payment to the organization's sources of supply.

b.      The organization employed several organizational leaders, such as **EDWARD KENER** and **JOHN BELANGER**, to assist **SARTI** in directing the movements of other members of the organization. **KENER** served as the central logistical coordinator for the organization, personally directing the movements of couriers employed by the organization. In addition to acting as a courier himself, **BELANGER** was responsible for recruiting, employing, and coordinating several couriers for the organization.

3

        c.      The organization also employed a multitude of couriers and "blockers" to smuggle marijuana from the border region to narcotics dealers in New York, Pennsylvania, New Hampshire, Massachusetts, and other locations. Couriers typically used rental vehicles and traveled in tandem with "blocking" vehicles. "Blocking" vehicles were used to scout ahead for law enforcement, communicate potential problems to couriers, and intentionally violate traffic laws to protect couriers. Couriers were paid on a per pound basis, usually between $50.00 and $70.00 per pound of marijuana being transported. "Blockers" were also paid on a per pound basis, usually paid between $10.00 and $15.00 per pound of marijuana being transported.

        d.      The organization transported the marijuana in large hockey style bags. Each bag was labeled with a number and customer identification, such as "ITL" or "ANAL," or a destination, such as "NYC" or "BOS." The marijuana was stored in heat sealed bags and labeled according to the type of marijuana contained in the bag. The organization traffics different types of marijuana such as "M39," "Kush," "Mango," "Jack," "Pink Haze," "Super Jack," "AAAA," "AAA," Bubblecious," "Grape," "Sour Grape," and "Diesel," among others.

        e.      The organization employs two primary means for smuggling marijuana across the border from Canada into the United States. First, the organization utilizes **RICHARD TODD ADAMS'** residence and trailers (hereinafter "ADAMS' compound") located on the Saint Regis Mohawk Reservation (SRMR). ADAMS' compound is located in Snye, Canada, adjacent to the Saint Regis Canal and the Saint Lawrence River and in close proximity to the Canadian border. The organization coordinated couriers in Canada to deliver marijuana to the Saint Lawrence River where **ADAMS** and his associates transported the marijuana across the river by boat or snow mobile, depending on the weather. Once the marijuana crossed the border, **ADAMS** and his associates secured the marijuana in trailers located on **ADAMS'** compound

4

until the organization's United States based couriers were able to retrieve the marijuana for further distribution in the United States. In addition to owning the trailers used to store the narcotics, **ADAMS** served as the primary facilitator for the organization on the SRMR, providing oversight and logistical coordination.

        f.      Second, the organization often utilizes a rural area adjacent to the Canadian border near Churubusco, New York. The organization coordinates couriers in Canada to transport the marijuana to secluded wooded areas along the border adjacent to Frontier Road and Lost Nations Road. Canadian-based couriers transport the marijuana on foot to the border region dressed in camouflage. Each courier is equipped with a Motorola MagOne two-way radio to communicate with their United States counterparts. The organization designated a specific frequency, which was outside of the authorized bandwidth, for all couriers to use during smuggling operations. Once both sets of couriers were in position, the marijuana was brought out of the woods and loaded into a vehicle for further distribution in the United States. **ANTHONY PLATA** served as the principal leader of the Canadian based couriers in the woods along the border.

**Overt Acts**

        3.      In furtherance of the conspiracy and to accomplish the objects thereof, the following overt acts were committed in the Northern District of New York and elsewhere:

        a.      On or about January 21, 2008, a co-conspirator met with **STEVEN SARTI, RICHARD ADAMS, CHARLES KEYES**, and **ANDREY NEVSKY** at **ADAMS'** compound in the SRMR. While at the residence, several co-conspirators loaded approximately 300 pounds of marijuana into three vehicles. The vehicles were then lead out of the SRMR by a "blocker" vehicle and delivered to narcotics dealers in the United States.

5

b. On or about February 21, 2008, **STEVEN SARTI** and a co-conspirator were transporting a drug ledger detailing the organization's narcotics transactions for a sixteen day period in February 2008. The ledger delineated payments to marijuana couriers and "blockers." The ledger described marijuana transactions to various individuals, the amount of marijuana per transaction, and the corresponding bag numbers delivered to those individuals. The ledger also showed payments to currency smugglers and the amount of currency being transported. For the sixteen-day period described in the ledger, the organization distributed approximately 4,400 pounds of marijuana and smuggled $10,300,000.00 in currency.

c. On or about March 12, 2008, co-conspirators delivered approximately 550 pounds of marijuana in ten large hockey style bags to a trailer located on **ADAMS'** compound. The marijuana was being stored in the trailer so that other members of the organization could retrieve the marijuana and deliver it to narcotics dealers in the United States.

d. On or about March 31, 2008, a co-conspirator rented a Ford Taurus and traveled to Frontier Road in Churubusco, New York. The co-conspirator then met with several co-conspirators in a secluded wooded area near the Canadian border. The co-conspirators loaded the Ford Taurus vehicle with two large hockey style bags containing approximately 130 pounds of marijuana. The co-conspirator (who rented the Taurus) attempted to deliver the marijuana to narcotics dealers in the United States, however, law enforcement officers interdicted and seized the marijuana. Meanwhile, after observing law enforcement officers in the area, the three other co-conspirators abandoned three large hockey style bags filled with approximately 200 pounds of marijuana and fled the area on foot into Canada.

e. On or about April 15, 2008, **ANTHONY PLATA** and several other co-conspirators transported approximately 580 pounds of marijuana in ten large hockey bags across

6

the United States border to a secluded location near Westville, New York.  Each bag was labeled with a number and **PLATA** had instructions to deliver specific bags to couriers arriving in four separate vehicles.  **ZACHARY GOUCHIE** and **KARL BOURASSA** arrived in Westville, New York near **PLATA's** location to pick up three hockey bags each and deliver those bags of marijuana to narcotics dealers in the United States.  **GOUCHIE** and **BOURASSA** were unable to retrieve the marijuana because law enforcement officers interdicted and seized the marijuana.

      f.     On or about October 6, 2008, a co-conspirator and **CHRISTOPHER BIRKBECK** traveled to Churusuco, New York, near Lost Nations Road and Frontier Road, and met with three co-conspirators along the United States border to obtain approximately 230 pounds of marijuana.  Once the co-conspirators loaded the marijuana into **BIRKBECK** and the co-conspirator's vehicle, **BIRKBECK** and the co-conspirator attempted to deliver the marijuana to narcotics dealers in the United States, however, law enforcement officers interdicted and seized the marijuana.  **BIRKBECK** and the co-conspirator were also transporting two industrial money counters to assist the organization in processing the proceeds of narcotics transactions, which typically involve large amounts of currency.

      g.    On or about October 20, 2008, **JASON BALDASSARE** traveled to **ADAMS'** compound on the SRMR and obtained approximately 130 pounds of marijuana.  The marijuana was loaded into the trunk of **BALDASSARE'S** rented vehicle.  **BALDASSARE** then attempted to deliver the marijuana to narcotics dealers in the United States, however, law enforcement officers interdicted and seized the marijuana.

      i.     On or about February 26, 2009, several co-conspirators traveled to **ADAMS'** compound on the SRMR.  Co-conspirators at **ADAMS'** compound loaded two rental vehicles with approximately 230 pounds of marijuana.  The co-conspirators then left the SRMR

7

with the marijuana loaded into their vehicles. One co-conspirator acted as a "blocker" vehicle and led two other co-conspirators from the SRMR. The co-conspirators attempted to deliver the marijuana to narcotics dealers in the United States, however, law enforcement officers interdicted and seized the marijuana.

### Count 2

### CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS

4.   From in or before July 2007, the exact date being unknown, up to and including on or about June 10, 2009, in the Northern District of New York and elsewhere, the Defendants,

**(1) STEVEN SARTI,**
aka "Goof"
aka "Goofy"
**(2) EDWARD KENER,**
aka "the Russian"
**(3) JOHN BELANGER,**
**(4) ZACHARY GOUCHIE,**
aka "French"
aka "Frenchie"
**(5) RICHARD TODD ADAMS,**
aka "Acid Adams"
aka "Frank"
**(6) CHARLES KEYES,**
aka "Chevy",
**(7) ANDREY NEVSKY,**
**(8) FABRIZIO PAPASODORO,**
"Fab"
**(9) ANTHONY PLATA,** and
aka Tony
**(10) OLIVER DAVID,**
aka "OD"

did knowingly and willfully combine, conspire, confederate, and agree with each other and others to commit an offense against the United States, that is to knowingly and willfully transport, transmit, and transfer, and attempt to transport, transmit, or transfer, monetary instruments and funds from a place in the United States to or through a place outside of the

8

United States and to a place in the United States from or through a place outside of the United

States, knowing that the funds involved in the transportation, transmission, and transfer

represented the proceeds of some form of unlawful activity and knowing that such

transportation, transmission, and transfer was designed in whole or in part to conceal or disguise

the nature, the location, the source, the ownership, and the control of the proceeds of the

specified unlawful activity, and to avoid a transaction reporting requirement under state or

federal law, in violation of Title 18, United States Code, Section 1956(a)(2)(B); all in violation

of Title 18, United States Code, Section 1956(h) .

### Manner and Means

5.       Among the manner and means by which the Defendants and other members of the

conspiracy conducted and participated in the conduct of the affairs of the conspiracy were the

following:

a.       From in or before July 2007, the exact date being unknown, up to and

including on or about June 10, 2009, in the Northern District of New York and elsewhere, the

organization, at the direction of **STEVEN SARTI** and **EDWARD KENER**,  engaged in a large

scale scheme to smuggle United States currency from the United States into Canada.

Throughout the existence of the organization, the organization obtained millions of dollars from

narcotics sales in the United States, as described in Count 1 of this indictment, and sought to

smuggle those proceeds into Canada.  The organization received large shipments of marijuana

from sources of supply in Canada, which were provided on a credit basis.  The organization then

delivered the marijuana to various narcotics dealers in the United States and received large sums

of United States currency from those dealers.  After receiving payment, the organization first

used the proceeds to pay couriers, "blockers," currency smugglers, as well as the organization's

9

leadership.  The remaining proceeds were smuggled back into Canada for the primary purpose of paying the organization's sources of supply.

        b.     In order to effectively smuggle the currency, the organization purposefully did not transport currency through designated ports of entry and, instead, smuggled the currency across the Canadian border at unofficial and unmanned crossing points along the border.  The organization utilized these unofficial and unmanned crossing points along the border to evade the currency reporting requirements and avoid law enforcement scrutiny.  By smuggling the proceeds of illegal narcotics sales from the United States into Canada, the organization also intended to conceal the source of those funds and prevent law enforcement officials from tracking the activities of the organization.  The organization typically paid currency smugglers between 0.5% and 2% of the total amount of currency being smuggled.

        c.     The organization employed two primary means for smuggling currency across the border from the United States to Canada.  First, the organization utilized **RICHARD TODD ADAMS'** compound located on the Saint Regis Mohawk Reservation (SRMR).  **ADAMS'** compound is located in Snye, Canada, adjacent to the Saint Regis Canal and the Saint Lawrence River and in close proximity to the Canadian border.  The organization coordinated couriers in the United States to deliver currency to **ADAMS'** compound.  The currency was stored in trailers until **ADAMS** or his associates could transport the currency north across the river by boat or snow mobile, depending on the weather.  Once the currency crossed the border, the organization coordinated couriers on the Canadian side of the border to retrieve the currency and deliver it to the organization's various sources of supply.

        d.     Second, the organization often utilized a rural area along Frontier Road and Lost Nations Road adjacent to the Canadian border near Churubusco, New York.  The

10

organization coordinated couriers in the United States to transport the currency to drop off locations in secluded wooded areas on Frontier and Lost Nations Road. A second set of Canadian couriers, dressed in camouflage, would hide in the brush awaiting the currency. Once both sets of couriers were in position, the currency was unloaded from the vehicle and transferred to the Canadian based couriers. The Canadian based couriers then transported the currency across the border on foot for delivery to the organization's various sources of supply.

### Overt Acts

6.      In furtherance of the conspiracy and to accomplish the objects thereof, the following overt acts were committed in the Northern District of New York and elsewhere:

a.      On or about July 17, 2007, a co-conspirator known as "the Italian" and **EDWARD KENER** transferred possession of approximately $453,000.00 in United States currency to one of the organization's couriers. **KENER** instructed the courier to transport the currency to Canadian based couriers located near Frontier Road in Churubusco, New York. The currency represented payment to the organization's source of supply in Canada for narcotics that the organization had previously smuggled into the United States. The courier attempted to deliver the currency to the Canadian based couriers at the border, however, law enforcement officers interdicted and seized the currency.

c.      Sometime in December 2007, the exact date being unknown, **OLIVER DAVID** transported approximately $600,000.00 in United States currency to couriers operating along the Canadian border near Churubusco, New York. The currency was then transported into Canada to the organization's source of supply for payment of previous marijuana shipments.

d.      On or about January 21, 2008, **STEVEN SARTI, ANDREY NEVSKY,** and **FABARISIO PAPASODORO**, attempted to transport approximately $502,000.00 in

11

United States currency from the United States into Canada through the SRMR. Law enforcement officers, however, interdicted and seized the currency. The currency represented payment to the organization's source of supply in Canada for narcotics that the organization had previously smuggled into the United States.

   e. On or about January 21, 2008, **STEVEN SARTI** and **ANDREY NEVSKY** meet with **CHARLES KEYES and RICHARD TODD ADAMS** at **ADAMS'** compound on the SRMR for the purpose of transporting approximately $700,000.00 in United States currency across the Saint Lawrence River into Canada.

   f. On or about March 5, 2008, Brandon Anderson attempted to transport approximately $2,100,000.00 in United States currency from the New England region to a location in California. Law enforcement officers, however, interdicted and seized the currency. Anderson was instructed to deliver the currency to **GOOFY** and other members of the organization. The currency represented proceeds of a narcotics transaction.

   g. On May 8, 2008, **JOHN BELANGER** and several co-conspirators attempted to transport approximately $242,000.00 in United States currency from Vermont into Canada, however, law enforcement officers interdicted and seized the currency.

**Count 3**

**CONTINUING CRIMINAL ENTERPRISE**

   7. From in or before 2007, the exact date being unknown, and continuously thereafter up through and including June 10, 2009, in the Northern District of New York, and elsewhere, the defendants, **STEVEN SARTI** and **EDWARD KENER** did unlawfully, knowingly and intentionally engage in a continuing criminal enterprise in that the Defendants unlawfully, knowingly and intentionally violated Title 21, United States Code, Sections

841(a)(1) and 846, which violations include, but are not limited to, the substantive violation

alleged in Count 1 (Conspiracy to Possess a Controlled Substance with the Intent to Distribute);

the substantive violations alleged in the Overt Acts in Count 1, including the substantive

violations alleged in Counts 4 through 8, which Counts are realleged and incorporated herein by

reference as though fully set forth in this Count, and which violations were part of a continuing

series of violations of the Controlled Substances Act, Title 21, United States Code, Section 801,

*et seq.*, undertaken by defendants, **STEVEN SARTI** and **EDWARD KENER** in concert with at

least five other persons with respect to whom **STEVEN SARTI** and **EDWARD KENER**

occupied positions of organizer, supervisor, and any position of management, and from which

such continuing series of violations the defendants obtained substantial income and resources.

All in violation of Title 21, United States Code, Section 848.

### Count 4

### CONSPIRACY TO IMPORT A CONTROLLED SUBSTANCE

That beginning sometime in or before July 2007, the exact date being unknown, and

continuing thereafter up to and including June 10, 2009, in the Northern District of New York

and elsewhere, the Defendants,

**(1) STEVEN SARTI,**
aka "Goof"
aka "Goofy"
**(2) EDWARD KENER,**
aka "the Russian"
**(3) JOHN BELANGER,**
**(4) ZACHARY GOUCHIE**,
aka "French"
aka "Frenchie"
**(5) RICHARD TODD ADAMS,**
aka "Acid Adams"
aka "Frank"
**(6) CHARLES KEYES**,

13

aka "Chevy",
**(7) ANDREY NEVSKY**,
**(8) FABRIZIO PAPASODORO**,
"Fab"
**(9) CHRISTOPHER BIRKBECK**,
**(10) ANTHONY PLATA**,
aka Tony
**(11) OLIVER DAVID**,
aka "OD"
**(12) JASON BALDASSARE**, and
**(13) KARL BOURASSA**,

did knowingly and intentionally combine, conspire, confederate and agree with each other and

others to import into the United States from a place outside of the United States, namely Canada,

a controlled substance, which offense involved 1,000 kilograms of marijuana, a schedule I

controlled substance, in violation of Title 21 United States Code, Section 952(a) and 960(b)(3).

All in violation of Title 21, United States Code, Section 963 and subject to the penalty

provisions of Title 21, United States Code, Section 841(b)(1)(A).

## Count 5

**POSSESSION WITH THE INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE**

That on or about March 8, 2008, in the Northern District of New York and elsewhere, the

Defendant,

### RICHARD TODD ADAMS

knowingly and intentionally possessed with intent to distribute a controlled substance, which

offense involved more than 100 kilograms of marijuana, a schedule I controlled substance, in

violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code,

Section 2 and subject to the penalty provisions of Title 21, United States Code, Section

841(b)(1)(B).

## Count 6

14

**POSSESSION WITH THE INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE**

That on or about April 15, 2008, in the Northern District of New York and elsewhere, the Defendants,

**ZACHARY GOUCHIE,**
**KARL BOURASSA, and**
**ANTHONY PLATA**

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense involved more than 100 kilograms of marijuana, a schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2 and subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(B).

## Count 7

**POSSESSION WITH THE INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE**

That on or about October 6, 2008, in the Northern District of New York and elsewhere, the Defendant,

**CHRISTOPHER BIRKBECK**

knowingly and intentionally possessed with intent to distribute a controlled substance, which offense involved marijuana, a schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2 and subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(C).

## Count 8

**POSSESSION WITH THE INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE**

That on or about October 20, 2008, in the Northern District of New York and elsewhere, the Defendant,

**JASON BALDASSARE**

knowingly and intentionally possessed with intent to distribute a controlled substance, which

offense involved marijuana, a schedule I controlled substance, in violation of Title 21, United

States Code, Section 841(a)(1) and Title 18, United States Code, Section 2 and subject to the

penalty provisions of Title 21, United States Code, Section 841(b)(1)(C).

<u>**First Forfeiture Allegation**</u>

1.      Counts 1, 3, 4, 5, 6, 7, and 8 of this Indictment are re-alleged and incorporated by

reference as though fully set forth herein.

2.      As a result of committing the controlled substance offenses alleged in Counts 1,

3, 4, 5, 6, 7, and 8 of this Indictment, Defendants,

**(1) STEVEN SARTI,**
aka "Goof"
aka "Goofy"
**(2) EDWARD KENER,**
aka "the Russian"
**(3) JOHN BELANGER,**
**(4) ZACHARY GOUCHIE,**
aka "French"
aka "Frenchie"
**(5) RICHARD TODD ADAMS,**
aka "Acid Adams"
aka "Frank"
**(6) CHARLES KEYES,**
aka "Chevy",
**(7) ANDREY NEVSKY,**
**(8) FABRIZIO PAPASODORO,**
"Fab"
**(9) CHRISTOPHER BIRKBECK,**
**(10) ANTHONY PLATA,**
aka Tony
**(11) OLIVER DAVID,**
aka "OD"
**(12) JASON BALDASSARE**, and
**(13) KARL BOURASSA,**

16

shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting, or derived from, any proceeds that said defendant obtained directly or indirectly as a result of said violations and any and all property used or intended to be used in any manner or part to commit or to facilitate the commission of the violations alleged in Counts 1, 3, 4, 5, 6, 7, and 8 of this Indictment.

**A.     Money Judgment**

A money judgement in the amount of $25,000,000.00.

**B.     Substitute Assets**

If the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeiture judgment.

<u>**Second Forfeiture Allegation**</u>

1.     Count 2 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     As a result of committing the offenses alleged in Count 2 of this Superseding Indictment, Defendants,

**(1) STEVEN SARTI,**
aka "Goof"
aka "Goofy"
**(2) EDWARD KENER,**
aka "the Russian"
**(3) JOHN BELANGER,**
**(4) ZACHARY GOUCHIE,**
aka "French"
aka "Frenchie"
**(5) RICHARD TODD ADAMS,**
aka "Acid Adams"
aka "Frank"
**(6) CHARLES KEYES,**
aka "Chevy",
**(7) ANDREY NEVSKY,**
**(8) FABRIZIO PAPASODORO,**
"Fab"
**(9) ANTHONY PLATA, and**
aka Tony
**(10) OLIVER DAVID,**
aka "OD"

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any

property, real or personal, involved in a violation of Title 18, United States Code, Section 1956,

or any property traceable to such property.

**A.    Money Judgment**

A money judgement for the full value of the funds laundered for the relevant period

identified in Count 2.

**B.    Substitute Assets**

If the property described above as being subject to forfeiture, as a result of any act or

omission of the defendants:

(a) cannot be located upon th exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

18

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendants up to the value of the forfeiture

judgment.

Dated: June 10, 2009                          A TRUE BILL,

                                              FOREPERSON OF THE GRAND JURY


ANDREW T. BAXTER
UNITED STATES ATTORNEY

BY:

Daniel C. Gardner
Assistant U.S. Attorney

19